## Detterer Unemployment Compensation Case.

Argued October 5, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Simon Mustokoff,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Roland M. Morgan,* Associate Counsel and *Charles J. Margiotti,* Attorney General, for appellee.

OPINION BY DITHRICH, J., January 12, 1951:

Appellant was employed by the Consolidated Cigar Company of Philadelphia as a carpenter for approximately four months ending December 18, 1948, when he was discharged for willful misconduct.

On July 28, 1949, he registered for work and filed a waiting week claim for the week ending August 3, 1949, and a continued claim for the week ending August 10, 1949. The Unemployment Compensation Bureau on August 15, 1949, disallowed the claim on the ground that claimant had provoked his discharge. On appeal the decision of the Bureau was affirmed by the referee and on further appeal the decision of the referee was affirmed by the Board of Review.

Section 402(e) of the Unemployment Compensation Law, as amended May 29, 1945, P. L. 1145, 43 PS §802, provides in part that: "An employe shall be ineligible for compensation for any week . . . (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work; . . ." There is a paucity of decision, not only in this Commonwealth but generally, as to what constitutes "willful misconduct," but the authorities seem to be in substantial agreement that "The standard to be applied is that of the employment contract, express or implied, which fixes the worker's duties in con-

nection with his work. Since conduct can be wrong only when it violates a duty to act otherwise, benefit decisions have held that an essential element of misconduct connected with the work is a breach of duty to the employer." 55 Yale L. J. 160, 163.

Applying that standard to appellant's claim, it appears from his own testimony that: "When I was hired, they asked if I could make cabinets and *do regular factory maintenance work,* which comes under the carpentry line. I said yes." (Emphasis added.) But when his employer "turned . . . over to" him the job of moving a partition designed "to hold the humidity of the cigars" by lining "on both sides with what they call 1 x 6 fencing lumber," he said that he would need the help of other carpenters. When laborers instead of carpenters were detailed to help him with the work he complained to a Mr. Lock, the superintendent who had hired him. He testified: "He furnished help, but not the proper kind of help. He furnished ordinary laborers." Because he did not get the type of help he thought he should have, claimant was dissatisfied and repeatedly complained on that score. He further testified: "There were continuous arguments . . . from the first day I came there to when I was discharged." He added: "I forced my own discharge due to the fact that Mr. Lock was unfair to' humanity." There is nothing in the evidence to support the latter part of that statement, unless it be that claimant thought Lock was imposing on him. He testified: "When he hired me he said it was maintenance carpenter work. When he saw I was good he imposed on me," the imposition being that he was required to do more than his share of the work. He admitted, however, that "The work wasn't too hard" and that when he and the men working under him were required to work longer hours than the usual work week "We got overtime for it."

The Board of Review affirmed the decision of the referee but vacated his findings of fact and substituted therefor its own findings, to the second and third of which exception has been taken by appellant. They are as follows: "2. There was constant friction between the claimant and the superintendent as to the method of doing the assigned work; as to the amount of work to be done and as to the type of assistance furnished the claimant and on many occasions the claimant failed completely to comply with the instructions of his superintendent. 3. On the last day of work another argument developed between the claimant and the superintendent and the claimant was thereupon discharged."

When the findings of the Board are supported by substantial competent evidence they are binding upon us. *Devlin Unemployment Compensation Case*, 165 Pa. Superior Ct. 153, 67 A. 2d 639.

We agree with appellee that "The claimant's actions were deliberate and intentional, and he not only knew that the natural and probable consequences of his conduct would result in his discharge, but it is established by his own testimony that he intended that it should [so] result . . ."

American Jurisprudence defines "Misconduct Precluding Payment of Unemployment Insurance" as follows: "Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, *a disregard of standards of behavior which the employer has the right to expect of his employee,* or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or

of the employee's duties and obligations to the employer." (Emphasis added.) 48 Am. Jur. 541, 542, §38.

We conclude that where an employe forces his own discharge for the reasons given by the employe in this case, his conduct shows such a deliberate "disregard of standards of behavior which the employer has the right to expect of his employee" as to constitute willful misconduct within the meaning of §402(e).

Decision affirmed.