Gagliardi Unemployment Compensation Case. Philadelphia Transportation Company, Appellant, *v.* Unemployment Compensation Board of Review.

144

Argued March 19, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Duncan O. McKee,* with him *Hamilton C. Connor, Jr.,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY WOODSIDE, J., May 13, 1958:

This is an appeal by the Philadelphia Transportation Company from an award of unemployment compensation by the Board of Review to Anthony J. Gagliardi, one of the company's employes.

The claimant, who had been employed in the mechanical department of the company to service buses, was discharged on February 6, 1957. Subsequently,

according to the terms of the collective bargaining agreement under which the claimant was employed, the discharge was referred to arbitrators who ordered Gagliardi reinstated in his job without any back pay. He returned to work with the appellant on May 14, 1957. He applied for unemployment compensation for the weeks ending March 28th and April 4th.

The bureau refused compensation on the ground that claimant was discharged for willful misconduct connected with his work. After taking testimony, the referee made findings of fact, and agreed with the bureau's conclusion. Upon appeal by the claimant to the Board of Review, it reversed the referee, ignoring his findings and basing its conclusions solely upon the decision of the arbitrators.

This was error. The board should have based its findings upon the evidence before the referee, and not upon the report of the arbitrators. We would be required to remand the case to the board for findings on the record were the decisive facts in dispute.

The evidence introduced before the unemployment compensation referee establishes that on the morning of February 5, 1957, during the claimant's scheduled hours of employment, he took his own automobile into the company's garage and was found there washing it in violation of the company's rules. This was not his first violation of his employer's rules. On December 15, 1956, during claimant's scheduled working hours, he was found in a barbershop reading a paper. Even before that event, the claimant's employment record was poor. Immediately prior to September 21, 1956, for seven consecutive nights he was low man in performance out of the team of seven employes with whom he was working. December 5, 1954, was a bad day for the claimant. He backed one bus into a work bench, and another into a garage door. For these offenses

he received a one and a half days suspension. On June 24, 1954, contrary to the foreman's instruction, he left a bus in gear with the engine running, as a result of which the bus struck a pole causing $1000 damage to the bus. For this offense claimant was suspended for three and a half days.

The claimant admitted that in violation of company rules he brought his personal automobile into the company garage and was washing it, and that during working hours he was found reading in a barbershop. He attempted to minimize these violations by testifying that he was merely washing the snow off his car, and that he was in the barbershop only a few minutes to get warm. He refused to make any explanation concerning the times he ran the buses into the bench, the door and the pole, and refused to answer questions on cross-examination concerning these events on the ground that his answer might tend to incriminate him. Passing the question of whether, under the circumstances, the claim of self-incrimination was legally made,[1] the claimant's refusal to explain these events leaves us with no explanation of his actions in causing $1000 worth of damage to his employer's property as a result of the violation of the company's rule on one date, and endangering property and possibly fellow employes through apparent mishandling of company property on another date.

---

[1] The claim of privilege against self-incrimination was not made by the witness but by his counsel. See VIII Wigmore on Evidence §2270. It is difficult to see how the claimant could have been guilty of a crime by backing his employer's bus into a bench and a door while not on a public highway and while operating the bus with his employer's permission. See VIII Wigmore on Evidence §2260, p. 356. Even if he were guilty of a crime the statute of limitations presumably would have run. See *Hale v. Henkel*, 201 U. S. 43, 67.

From this evidence the referee properly found that "claimant's conduct as a whole did evince such a willful and wanton disregard of the employer's interest as is found in deliberate violation and showed an intentional and substantial disregard of the employer's interest, and of the obligations owing by the claimant to his employer such as would constitute willful misconduct."

Section 402 (e) added to the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897 by the Act of May 29, 1945, P. L. 1145, §9, 43 PS §802(e), as subsequently amended, provides as follows: "An employe shall be ineligible for compensation for any week . . . (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act; . . ."

"Willful misconduct" is not defined in the statute, but this Court has held it to comprehend an act of wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employe, or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer. *Moyer Unemployment Compensation Case,* 177 Pa. Superior Ct. 72, 74, 110 A. 2d 753 (1955); *Simonian Unemployment Compensation Case,* 174 Pa. Superior Ct. 81, 82, 98 A. 2d 428 (1953); *Detterer Unemployment Compensation Case,* 168 Pa. Superior Ct. 291, 294, 77 A. 2d 886 (1951).

"Willful misconduct" does not necessarily require actual intent to wrong the employer. If there is a conscious indifference to the perpetration of a wrong, or a reckless disregard of the employe's duty to his

employer he can be discharged for "willful misconduct" and will be denied benefits. *Dati Unemployment Compensation Case,* 184 Pa. Superior Ct. 292, 295, 132 A. 2d 765 (1957); *Ristis Unemployment Compensation Case,* 178 Pa. Superior Ct. 400, 116 A. 2d 271 (1955); *Sabatelli Unemployment Compensation Case,* 168 Pa. Superior Ct. 85, 88, 89, 76 A. 2d 654 (1950). As stated by this Court in *Sopko Unemployment Compensation Case,* 168 Pa. Superior Ct. 625, 628, 82 A. 2d 598 (1951): "An employe is obliged to render loyal, diligent, faithful, and obedient service to his employer."

This does not mean that every employe who is discharged because his work is not satisfactory is ineligible for compensation. Because of limited mental capacity, inexperience, or lack of coordination a conscientious employe may be unable to perform the duties of his employment to the satisfaction of his employer. If such person is discharged, he is entitled to unemployment compensation. *Ristis Unemployment Compensation Case,* supra; *Taylor Unemployment Compensation Case,* 170 Pa. Superior Ct. 119, 84 A. 2d 521 (1951); *Lux Unemployment Compensation Case,* 180 Pa. Superior Ct. 90, 93, 118 A. 2d 231 (1955).

Here, the claimant's violation of his employer's rules in washing his car and in going to the barbershop during the time for which he was being paid to work was intentional. *Laney Unemployment Compensation Case,* 167 Pa. Superior Ct. 551, 553, 76 A. 2d 487 (1950). To hold otherwise would be a capricious disregard of the testimony. Claimant's leaving a bus in gear with the engine running contrary to his foreman's order, can also be considered as willful misconduct. His unexplained collisions with the door and bench on the same day indicate "a conscious indifference to the perpetration of the wrong", so that a constructive intention is imputable to him. *Sabatelli Unemployment Compen-*

*sation Case,* supra, 168 Pa. Superior Ct. 85, 88, 89, 76 A. 2d 654 (1950) ; *Sopko Unemployment Compensation Case,* supra, 168 Pa. Superior Ct. 625, 628, 82 A. 2d 598 (1951) ; *Armstrong Unemployment Compensation Case,* 179 Pa. Superior Ct. 488, 118 A. 2d 217 (1955) ; *Allen Unemployment Compensation Case,* 168 Pa. Superior Ct. 295, 77 A. 2d 889 (1951).

In the absence of further explanation, the employer's rating of the claimant as the poorest employe on the team is not evidence of willful misconduct. There was no indication that during the time for which this rating was made, the claimant was not trying to do his job well. He might have been rated lowest among the employes merely because he lacked the capacity to perform the duties of his employment as well as his fellow employes could perform them.

This Court has said that "no prior acts of misconduct are necessary to deny claimant's benefits under the act and despite a prior good record, a single act may constitute willful misconduct under the act." *Dati Unemployment Compensation Case,* 184 Pa. Superior Ct. 292, 295, 132 A. 2d 765 (1957) ; *Wilsey Unemployment Compensation Case,* 169 Pa. Superior Ct. 368, 371, 82 A. 2d 503 (1951). Here the claimant continued his willful misconduct after repeated warnings. See *Evans Unemployment Compensation Case,* 180 Pa. Superior Ct. 587, 590, 119 A. 2d 553 (1956).

The application of the above stated principles of law to the undisputed facts of this case compel only one conclusion—that the claimant is ineligible for compensation during the period of his suspension because of willful misconduct.

The Board of Review ignored the evidence and the law, basing its decision solely on the holding of the arbitrators who were designated in accordance with the Arbitration Agreement entered into by the employer

and employe. The Board of Review cannot delegate to another body its duty to find facts and apply the law. Here it ignored the findings and conclusions of the referee which were fully supported by the evidence, and accepted the findings of the arbitrators. It is interesting but not important that the Board of Review came to its conclusion in spite of the statement of the impartial arbitrator in his discussion that the claimant, "has a very bad record" and "deserves to be fired," . . . but, "I am going to give him the benefit of the doubt." Whatever the arbitrators found or decided could not rule this case. The arbitrators had no authority from the legislature to decide whether the claimant was guilty, under the law, of willful misconduct so as to be ineligible for unemployment compensation, and the Board of Review had no power to delegate, except to a referee, the duty imposed upon it by law. This is so basic that it is difficult to find cases in which the question has been raised, but it might be noted that, as a general rule even judgments of courts of record in criminal cases are not admissible in civil proceedings founded on the same facts, and vice versa. 50 C.J.S. Judgments §754(b), p. 269, 270. *Nowak v. Orange,* 349 Pa. 217, 36 A. 2d 781 (1944); *Zubrod v. Kuhn,* 357 Pa. 200, 204, 53 A. 2d 604 (1947); *Bobereski, Adm. v. Insurance Company of Pa.,* 105 Pa. Superior Ct. 585, 592, 161 A. 412 (1932); *Estate of Edward D. Gartner,* 94 Pa. Superior Ct. 45, 48 (1928); V Wigmore on Evidence, 3rd Edition, §1671a. If a judgment of a court of record cannot generally be used in a proceeding in another court of record founded on the same facts, how much less so could a decision of a nongovernmental body be used to determine the willful misconduct of an unemployment compensation claimant.

Furthermore, the issue before the arbitrators was entirely different than the issue before the Board of Review. The arbitrators were not dealing with the legal problem of willful misconduct, but with the problem of discharge and reinstatement under the collective bargaining agreement. Employment contract violations are not redressible by the award of benefits out of the unemployment compensation fund. *Byerly Unemployment Compensation Case,* 171 Pa. Superior Ct. 303, 309, 90 A. 2d 322 (1952).

The Board of Review reasoned that in as much as the employer and employes agreed to arbitration, it was bound by such findings of fact by the arbitrators as might have a bearing upon the allowance of unemployment compensation. This overlooks the interest which the Commonwealth has in the unemployment compensation fund, and the duty of the unemployment compensation officials to protect the fund against dissipation by those not entitled under the law to payments from it. The Board of Review upon appeal is made the defendant by statute, and the legislature has indicated that it does not expect the board to be satisfied with the evidence presented to it by the employer and employe if it is of the opinion that it has not thereby obtained all the facts, for the legislature makes repeated reference to "investigations" by the board. See 43 PS §763(d).[2]

---

[2] Many students of government consider it unfortunate that administrative boards and commissions developed to be both parties and judges in so much of the litigation before them. This result would have been difficult to avoid in some instances, particularly in the cases of independent boards and commissions. It could have been more easily avoided in cases of departmental boards and commissions of which the Unemployment Compensation Board of Review is one.

The legislature provided in the Unemployment Compensation Law that in appeals taken to this Court the Board of Review

In *Phillips v. Unemployment Compensation Board,* 152 Pa. Superior Ct. 75, 83, 30 A. 2d 718 (1943), Judge HIRT speaking for this Court said: "The Board is charged with the duty of safeguarding the fund. If the employer does not appear and in justice to the fund additional testimony is required, it is the duty of the referee or the Board to call witnesses who can supply it." It is the duty of the referee, as representative or agent for the board "to fairly develop the facts," as Judge WRIGHT said in *Rokosky Unemployment Compensation Case,* 174 Pa. Superior Ct. 357, 361, 101 A. 2d 124 (1953).

The employer and the employe cannot determine by agreement that an employe shall receive unemployment benefits, when under the facts and the law he is not entitled to such payments. See *Cozzone Unemploy-*

---

should be made the party defendant. Section 510, 43 PS §830. This, of course, forced the board into the position of being a party litigant in every case. The Department of Labor and Industry, which acts in unemployment compensation matters through the Bureau of Employment Security, was given no clear mandate by the legislature to appear before this Court. In *Mills Unemployment Compensation Case,* 362 Pa. 342, 67 A. 2d 114 (1949), the Supreme Court held that the bureau had no right to take an appeal to the Superior Court from a decision of the Unemployment Compensation Board of Review. Although the legislature at its next session amended the Unemployment Compensation Law to grant to the Department, and thus the Bureau, the right of appeal, (See Act of September 29, 1951, P. L. 1580, 43 PS §830), it did not remove the provision that the board should be a party defendant in all appeals. As a matter of practice, after the *Mills Unemployment Compensation Case,* supra, the bureau has not actively participated in appeals before this Court. Having been made a party to the appeals by statute the duty is, of course, imposed upon the board to appear before us through its counsel and defend its decisions. Thus it developed that the board has become charged with the double duty of protecting the unemployment compensation fund and of deciding a controversy between a claimant and the fund.

*ment Compensation Case,* 175 Pa. Superior Ct. 170, 172, 173, 103 A. 2d 284 (1954), where the employer asked the board to grant the employe compensation and the board's refusal to do so was affirmed on the ground that the discharge was for willful misconduct. If the employer and employe cannot "agree" that an employe shall receive benefits regardless of eligibility, neither can they "agree" upon the tribunal which is to determine eligibility.

Because of the contest which frequently arises between the employer and employe, the interest of the Commonwealth and the vast body of covered employes in the solvency of the fund is sometimes forgotten.

In *Kelleher Unemployment Compensation Case,* 175 Pa. Superior Ct. 261, 264, 104 A. 2d 171 (1954) it was said that the burden is upon the employer to show circumstances which would bring a claimant under the condemnation of the disqualifying provisions of the Unemployment Compensation Act. This is true only in the sense that without evidence to the contrary, it is to be assumed that the disqualifying provisions are not applicable. There is no burden upon the employer to establish ineligibility. Whether or not the employer desires the employe to receive benefits is immaterial. It is the duty of the employer and the employe to present the relevant facts to the unemployment compensation officials truthfully and accurately, and then it is for those officials to determine the eligibility of the claimant. It is the duty of the board to develop all the relevant facts, regardless of whether or not such facts are presented voluntarily by the claimant and the employer and in order to perform this duty the legislature gave the board power to subpoena and power to investigate.

In *Smolensky Unemployment Compensation Case,* 183 Pa. Superior Ct. 344, 346, 132 A. 2d 698 (1957),

a case involving willful misconduct, the last sentence in the opinion made reference to the report of a board of arbitrators, but the language used by this Court in referring to the report should have indicated that we did not consider it a part of the case. The reference starts with, "In passing it may be noted."

Section 18 of the Unemployment Compensation Law (43 PS §830) provides: "In an appeal to the Superior Court the findings of the board or referee, as the case may be, as to the facts, if supported by the evidence and in the absence of fraud, shall be conclusive." The evidence here supports the findings of the referee. There is no relevant evidence to support the findings of the board. The claimant's unemployment during the weeks in question was "due to his discharge or temporary suspension from work for willful misconduct connected with his work," and he is, therefore, ineligible for unemployment compensation.

Decision of the Board of Review is reversed.