## Neumeyer Unemployment Compensation Case.

322

Argued June 11, 1958. Before Rhodes, P. J., Hirt, Gunther, Wright, Woodside, Ervin, and Watkins, JJ.

*Forrest G. Schaeffer*, with him *Edelman & Schaeffer*, for appellant.

*Sydney Reuben*, Assistant Attorney General, with him *Thomas D. McBride*, Attorney General, for appellee.

Opinion by Woodside, J., September 11, 1958:

This case involves the rights of a discharged federal employe to unemployment compensation under the Pennsylvania Unemployment Compensation Law and the Federal Social Security Law.

The claimant had been employed by the United States Postal Department as postmaster at Macungie. After being discharged on October 4, 1955, he made application for unemployment compensation which was denied him by the Bureau of Employment Security, the referee, and the Board of Review.

The Board found that the claimant was discharged "for cause" and that "The basis for the termination of claimant's service from Federal employment were the findings that he expended official funds for clerical hire injudiciously, failed to answer official correspondence and was found to be generally negligent."

Under these facts the board concluded that the claimant was disqualified under section 402(e) of the Pennsylvania Unemployment Compensation Law, 43 PS §802. This section provides that "An employe

shall be ineligible for compensation for any week . . . (e) In which his unemployment is due to his discharge . . . from work for willful misconduct connected with his work . . .".

The Regional Controller of the United States Postal Department certified to the Pennsylvania Bureau of Employment Security that the claimant was removed from his position for the reason that he "expended official funds for clerical hire injudiciously. Failed to answer Official correspondence. Inefficiency."

The appellant contends (1) that the certification was not evidence from which the board could make the above findings, and (2) that the findings do not establish "willful misconduct" as the term is used in the above statutory provision.

Inasmuch as this is the first case of a federal employe claiming unemployment compensation under the Pennsylvania Unemployment Compensation Law to come before us, it may be advisable to review briefly the history of the law on this subject.

When the Unemployment Compensation Law was originally enacted on December 5, 1936, P. L. 2897 (1937), it provided in section 4(j) "The word 'employment' shall not include . . . (5) services performed in the employ of the United States Government or of an instrumentality of the United States;".

During the Special Session of 1942 the above paragraph 5, then section 4(j) (4) (5), P. L. 60, 66, was amended by adding thereto the following: ". . . exempt under the Constitution of the United States from the contributions imposed by this act, except that, to the extent that the Congress of the United States shall permit states to require any instrumentalities of the United States to make payments into an unemployment fund under a state unemployment compensation law, all of the provisions of this act shall be applicable

to such instrumentalities in the same manner to the same extent and on the same terms as to all other employers. In the event that this State shall not be certified for any year by the Social Security Board under section one thousand six hundred three (c) of the Federal Internal Revenue Code the payments required of such instrumentalities with respect to such year shall be refunded by the department from the fund in the same manner and within the same period as is provided in section three hundred eleven of this act with respect to contributions erroneously collected."

The purpose of this amendment was to permit certain instrumentalities of the United States to become subject to the Pennsylvania Unemployment Compensation Law to the extent that, *Congress permitted states to REQUIRE any INSTRUMENTALITY of the United States to make payments into a state unemployment fund.* The amendment required instrumentalities, which were permitted by Congress to do so, to pay the Pennsylvania unemployment compensation tax, and provides that the employes of these federal instrumentalities when qualified under Pennsylvania law, would receive unemployment compensation benefits.

This amendment was not intended to cover, nor does it now cover, the employes of the departments of the United States Government. The federal government does not pay to Pennsylvania the unemployment compensation tax to cover the federal postal employes. These federal employes were not covered by unemployment compensation until subchapter XV was added to the federal Social Security Act by the amendment of September 1, 1954: 68 Stat. §1131-1135; 42 U.S.C.A. §1361-1370.

This amendment to the federal Social Security Law provided, inter alia, (with emphasis throughout sup-

plied) as follows: "(a) The Secretary is authorized on behalf of the United States to enter into an agreement with any State, or with the agency administering the unemployment compensation law of such State, under which such State agency (1) will make, *as agent of the United States,* payments of compensation, on the basis provided in subsection (b) of this section, to Federal employees, and (2) will otherwise cooperate with the Secretary and with other State agencies in making payments of compensation under this subchapter.

"(b)   Any such agreement shall provide that compensation will be paid by the State to any Federal employee, with respect to unemployment after December 31, 1954, *in the same amount, on the same terms, and subject to the same conditions as the compensation which would be payable to such employee under the unemployment compensation law of the State* if the Federal service and Federal wages of such employee assigned to such State under section 1364 of this title had been included as employment and wages under such law:" 42 U.S.C.A. §1362.

. . .

"(a)   Each State shall be entitled to be paid by the United States an amount equal to the additional cost to the State of payments of compensation made under and in accordance with an agreement under this subchapter which would not have been incurred by the State but for the agreement.

"(b)   In making payments pursuant to subsection (a) of this section, there shall be paid to the State, either in advance or by way of reimbursement, as may be determined by the Secretary, . . ." 42 U.S.C.A. §1366.

. . .

"(a) All Federal departments, agencies, and wholly owned instrumentalities of the United States are *directed to make available to State agencies* which have agreements under this subchapter or to the Secretary, as the case may be, such *information* with respect to the Federal service and Federal wages of any Federal employee as the Secretary may find practicable and *necessary for the determination of such employee's entitlement to compensation* under this subchapter. Such information shall include *the findings of the employing agency* with respect to—

"(1) whether the employee has performed Federal service,

"(2) the periods of such service,

"(3) the amount of remuneration for such service, and

"(4) *the reasons for termination of such service.*

The employing agency shall make the findings in such form and manner *as the Secretary shall by regulations prescribe* (which regulations shall include provision for correction by the employing agency of errors or omissions). Any *such findings* which have been made in accordance with such regulations *shall be final and conclusive* for the purposes of sections 1362(c) and 1363(c) of this title." 42 U.S.C.A. §1367.

The above provision imposes a duty upon the Pennsylvania Unemployment Compensation authorities to accept as final and conclusive the findings of the Federal employing agency with respect to—whether the claimant has performed Federal service; the period of such service; the amount of remuneration for such service, and *the reasons for termination of such service.*

As the findings of the Federal employing agency on these matters are final and conclusive, there is no rea-

son for our agencies to hear the claimant, or to accept any other evidence, *with respect to the matters enumerated above.* The claimant's right to be heard, and his right to contest the correctness of these enumerated matters must be established under Federal law before Federal authorities.

The appellant contends that it does not appear from the record before the board that the findings of the Federal employing agency were "in such form and manner as the Secretary (of Labor did) by regulations prescribed." There is a presumption that officials have performed their duty. Therefore, we must presume that the Federal Secretary of Labor did promulgate regulations as required by the above Act of Congress, and that the Postal Department followed them in this case. *Matson v. Margiotti,* 371 Pa. 188, 198, 88 A. 2d 892 (1952) ; *Beacom v. Robison,* 157 Pa. Superior Ct. 515, 521, 43 A. 2d 640 (1945).

The appellant argues in his brief that he was not granted a hearing before the Federal authorities, but this too is a matter for Federal authorities and not for us.

The claimant's right to compensation must be based upon the above Act of Congress. Under it our Board of Review is acting as an agent of the United States. The findings made by the Federal employing agency and certified to the State unemployment compensation authorities are final and conclusive. The Board of Review is, therefore, required to make the above finding as the reason for termination of the claimant's Federal service.

The only problem presented in this case arises out of the brevity of the findings as originally certified by the Federal authorities. Congress imposed upon them the duty of making available to the states' unemployment compensation agencies *such information as*

*is necessary for the determination of the Federal employe's entitlement to compensation.*

Under our Unemployment Compensation Law an employe may be discharged "for cause" or "for inefficiency", and not be guilty of willful misconduct. See *Gagliardi Unemployment Compensation Case,* 186 Pa. Superior Ct. 142, 148, 141 A. 2d 410 (1958). To determine whether a Federal employe was guilty of willful misconduct connected with his work we must know what he did.

It appears from the record before us that the claimant was allocated 1027 clerical hours for a certain period and that contrary to instructions, he used 1209 such hours in the period. Apparently this information was furnished to the Pennsylvania authorities by the Federal employer in an unofficial communication, and the claimant when questioned about it said it was substantially correct. This is not the procedure contemplated by the Act of Congress to determine the reasons for termination of the claimant's Federal service. The proper procedure would have been for the Federal authorities to certify this information, and all other information concerning the reasons for termination which would have a bearing on such employe's entitlement to compensation.

In cases of this kind, it is not necessary for the Federal authorities to appear in person before our referees and board to testify concerning the reason for claimant's termination, as that constitutes a fact which is to be found by the Federal authorities and accepted by our authorities as final and conclusive. The Federal employing agency should certify the facts on this. But whether under the facts certified to us the claimant is entitled to compensation is a matter which Congress says we must determine under our law. Thus we are required to determine whether the

reason for termination of the claimant in this case shows him to be guilty of willful misconduct connected with his work.

Is an employe who was discharged because he expended official funds for clerical hire injudiciously, failed to answer official correspondence and was generally negligent, guilty of willful misconduct connected with his work? The bureau, referee and board concluded he was. We agree with their conclusion.

"Willful misconduct" does not necessarily require actual intent to wrong the employer. If an employe shows a conscious indifference to the duty owed his employer, he may be discharged for "willful misconduct" and will be denied compensation. *Allen Unemployment Compensation Case,* 168 Pa. Superior Ct. 295, 77 A. 2d 889 (1951); *Ristis Unemployment Compensation Case,* 178 Pa. Superior Ct. 400, 401, 116 A. 2d 271 (1955); *Dati Unemployment Compensation Case,* 184 Pa. Superior Ct. 292, 295, 132 A. 2d 765 (1957).

The board found as a fact that the claimant failed to answer official correspondence, that he expended Federal funds "injudiciously" and that he was generally negligent. On the basis of these findings, it properly concluded the claimant was guilty of "willful misconduct", and thus not entitled to compensation.

Decision affirmed.