Panzino Unemployment Compensation Case.

Argued April 15, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Arnold D. Wilner,* with him *Wilner, Wilner and Kuhn,* for claimants, appellants.

*Sydney Reuben,* Assistant Attorney General, and *Thomas D. McBride,* Attorney General, with them *Harry J. Rubin,* Deputy Attorney General, for appellee.

*John G. Wayman,* with him *Joseph G. Armstrong, III,* and *Reed, Smith, Shaw & McClay,* for employer, intervenor.

*Lloyd H. Fuge, Marjorie Hanson Matson, Richard M. Moss,* and *Sylvan Libson,* filed a brief for American Civil Liberties Union, amicus curiae.

OPINION BY WOODSIDE, J., December 11, 1958:

After having been employed by Westinghouse Electric Corporation for a number of years Frank W. Pan-

zino, Jr. and Thomas J. Fitzpatrick were discharged. They separately filed unemployment compensation claims. On the basis of the information before it, the Bureau of Employment Security denied each of them compensation. Subsequently, upon appeal to the referee, and then to the board, these agencies came to the same conclusion.

Each of the claimants, along with Evelyn Darin, then appealed to this Court, and their cases were argued together. Inasmuch as we think Evelyn Darin's case has distinguishing characteristics we have filed a separate opinion in her case.

The Unemployment Compensation Board found that these employees had been identified as members of the Communist Party by witnesses at a hearing before the Senate Internal Security Committee, and that although given an opportunity to refute the allegations of membership in the Communist Party they refused to take this opportunity, and that as a result of the allegations concerning Communist activities the claimants were discharged. The employer of the claimants was engaged in defense contracts in the electrical industry, one of the recognized basic national industries.

In the report filed by Fitzpatrick's employer with the unemployment compensation authorities the following was set forth: that Fitzpatrick had been a disturbing influence among his fellow employes; that in testimony before the Senate Internal Security authorities in Pittsburgh Matthew Cveticz, an undercover agent of the Federal Bureau of Investigation, testified under oath that Fitzpatrick was a member of the Electrical Commission of the Communist Party, and that Joseph Mazzei, also an undercover agent for the Federal Bureau of Investigation testified that he knew Fitzpatrick as a very definite Communist agent in the trade movement, and that Mrs. Mazzei also testified

that she knew Fitzpatrick as a Communist Party member, and that Francis Nestler also testified that Fitzpatrick attended with him both closed and open meetings of the Communist Party; that earlier James Joseph Conroy testified before the Dies Committee on Un-American Activities that he knew Fitzpatrick as a Communist; that before the House Un-American Activities Committee in 1949 Charles E. Copeland testified under oath that he had attended Communist Party meetings with Fitzpatrick, and that faced with these charges of membership in the Communist Party Fitzpatrick refused to deny them when questioned before the Senate Sub-Committee in Pittsburgh, but instead invoked the Fifth Amendment.

Activity in the Communist Party by the claimant to the degree indicated above would be sufficient for his employer, in the absence of explanation from the employe, to discharge him for willful misconduct, and for the board to find that the employe was not entitled to unemployment compensation. See *Ault Unemployment Compensation Case*, 188 Pa. Superior Ct. 260, 146 A. 2d 729 (1958).

The above report of the employer, however, was not made under oath and no testimony concerning it was taken before the referee or the board. The employer did not appear, and offered no testimony at the hearing. Neither was the claimant questioned concerning it.

The claimant was asked whether he was summoned as a witness before the investigating bodies, and whether he had refused to answer questions invoking the Fifth Amendment, but he was not asked to explain what questions he had refused to answer nor was he given an opportunity to explain whether he was a member of the Communist Party, whether he had been a member of the Communist Party, and whether there

was any satisfactory explanation concerning past membership, nor was he questioned concerning the sworn testimony presented to the Congressional Committee which indicated he was a security risk. It does not appear from the record whether his employer questioned him about his Communistic activities, or whether he had an opportunity to discuss with his employer the sworn evidence given against him at the Congressional Committee hearings.

What we said above concerning Fitzpatrick relates in every material detail to Panzino.

When there is sworn testimony before a court or legally constituted governmental body that an employe in a plant with defense contracts is an active member of the Communist Party, we think it is not only the right, but the duty of the employer to question the employe, and if the employe then refuses to discuss the matter and make a satisfactory explanation of such conduct, the employer should discharge him. See *Lerner v. Casey et al.,* 357 U. S. 468, 78 S. Ct. 1311 (1958); *Beilan v. Board of Education,* 357 U. S. 399, 78 S. Ct. 1317 (1958). Continued activity in the Communist Party, designated by statute in this Commonwealth as a conspiracy to overthrow the Government of the United States by force, is willful misconduct of an employe in a defense industry. *Ault Unemployment Compensation Case,* supra, 188 Pa. Superior Ct. 260, 146 A. 2d 729 (1958).

In *Gagliardi Unemployment Compensation Case,* 186 Pa. Superior Ct. 142, 141 A. 2d 410 (1958) we said that it is the duty of the referee and the board "to fairly develop the facts." If it appears from the report of his employer that the claimant was charged under oath with having been a Communist and active in the Communist Party, and if activities in the Communist Party is willful misconduct connected with his

employment which would justify his discharge by his employer, then he is not entitled to compensation. Under these circumstances it is a question of legitimate inquiry by the compensation authorities.

At the hearing the only question put to the above claimants was whether they were called to testify before a Congressional Committee and whether they had "refused to answer questions invoking the Fifth Amendment." Both claimants answered these questions in the affirmative. This alone, with nothing more, may give a private employer cause to discharge an employe if he wishes, but does not, standing alone, establish willful misconduct on the part of the employe when he claims unemployment compensation.

It has been suggested in the argument of the series of cases of which this is one, that there is nothing opprobrious or improper in invoking the Fifth Amendment. This is nonsense. Courts cannot assume that those who claim the privilege are either "criminals or perjurers," (See *Ullman v. United States*, 350 U. S. 422 (1956)), but that does not mean that the claim of privilege is a praiseworthy act.

When our government concludes through its legally constituted authorities that it needs certain information, a loyal citizen is generally willing to furnish such information. The witness has a constitutional privilege to refuse to help his government in this respect, but his exercise of this privilege increases the problems of his government, and the dangers it faces from its enemies. The refusal to help the government hinders its operation, and is an unpatriotic act.

No justice could be administered in our courts without the willingness of witnesses to appear and testify, and without the power of the court to compel witnesses to testify. What would happen in the trial of negligence cases if all witnesses to an automobile ac-

cident refused to testify on the grounds that their testimony might incriminate them? A witness has a legal right under both the Constitution of the United States and the Constitution of Pennsylvania to refuse to testify on the grounds that his testimony may tend to incriminate him. A citizen has a legal right to refuse to vote, and to refuse to contribute to any charity and religious organization, and to refuse to assist his neighbor when his house burns and his family is in danger, but certainly no one would suggest that such conduct, although "legally permissible" is "proper".

The claimants in this case have willfully and deliberately, but legally, refused to furnish their government information which the constituted authorities of their government considered valuable. Their right to do this is not questioned, but when our young men are being called to military service because their government feels the necessity of protecting distant lands and peoples, it seems incongruous for us to question the right of employers within our borders to protect their personnel and property from those appearing to be members of an organization dedicated to the overthrow of our government by force. Certainly if our young men must leave their jobs and homes to protect the people and property of other lands against Communist aggression, our employers should at least have the right to question and receive frank answers from their employes about their connections with the Communist Party.

Because it is not clear from the record whether the claimants had the opportunity of answering to their employer the accusations made against them, and because they have not refused before the referee and board to answer any questions bearing upon their participation in Communistic Party activities, the case must be returned to the Unemployment Compensation Board for additional testimony.

The claimants should have an opportunity to further testify on the matter of their alleged misconduct as charged by the employer and the unemployment compensation authorities should further develop the facts. The employer should furnish sworn testimony concerning the reasons for discharge.

The case is remanded to the Unemployment Compensation Board with direction to proceed in a manner not inconsistent with this opinion.