Zikesh Unemployment Compensation Case. Pittsburgh Railways Company, Appellant, *v.* Unemployment Compensation Board of Review.

Argued April 15, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Margaret M. Morrison,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Anne X. Alpern,* Attorney General, for appellee.

OPINION BY HIRT, J., September 16, 1959:

Anthony J. Zikesh was an experienced car operator; he had been in the employ of Pittsburgh Railways Company for a period of about 12 years. He was discharged on February 26, 1958 for willful misconduct in connection with his work. The bureau found that the employer was justified in discharging him on that ground under §402(e) of the Law, 43 PS §802, and benefits were disallowed. On appeal a hearing was held before the referee on April 28, 1958. On the evidence submitted, the referee affirmed the decision of the bureau. Thereafter, however, on claimant's application, the board remanded the proceedings to the referee for further hearing at which time claimant either categorically denied or attempted to explain away the charges of the various complaints against him. In the meantime the matter of claimant's discharge had been ruled out to arbitration by the union in accordance with a provision of the contract between the union and the company. On July 8, 1958 the Board of Arbitration made an award reinstating claimant to his former work as an employe of the company.

The referee in his decision made the following findings of fact: "2. During the course of his employment the claimant had been warned that his operating performance and contacts with passengers must improve. 3. Subsequent to the warnings the employer received complaints from passengers that claimant had treated them discourteously. 4. A month prior to his discharge claimant's entire record was reviewed with him, and he was warned that unless he showed immediate and sustained improvement, dismissal would follow. 5. On February 20, 1958 the claimant's discourteous treatment of a passenger resulted in a complaint to the em-

ployer. After investigation and review of the complaint, claimant's discharge was effected February 26, 1958." Based upon the above findings the referee concluded: "The claimant's attitude and conduct were contrary to the standard of behavior an employer has a right to expect of an employe, and were detrimental to the employer's best interests. Under these circumstances, the claimant's discharge was disqualifying under the provisions of Section 402(e) of the Law."

The findings were amply supported by the evidence. There was testimony of the employer's General Superintendent of Transportation that throughout the period 1946 to 1955 claimant's performance as a car operator was unsatisfactory; he had been involved in occurrences involving complaints from passengers; of violation of company rules, and neglect to obey orders. On April 10, 1956 specifically, there were complaints from passengers that he had passed them by at a regular stop. And in violation of an operating rule claimant had failed to display the proper destination sign on his car. On that date he was warned in the presence of the business agent of his union that he would be dismissed from company service if his operating performance did not improve. On another occasion he deliberately carried a passenger beyond her requested stop and was discourteous to her. There was evidence of his violation of company operating instructions on two other occasions. On January 13, 1958 he pulled away from a stop without waiting for the transfer passengers from another car, although signaled by the car to his rear that there were passengers for transfer. Following this incident claimant was again warned as to the seriousness of his derelictions. On January 24, 1958 he failed to follow instructions resulting in delay and inconvenience to passengers. Following this incident *his entire record* was reviewed with him and he was warned as stated in the referee's 4th finding. Notwithstanding

this warning, within one month later, complaints were lodged with the company by two passengers that he had passed them up at two successive stops. He was also discourteous to a passenger who had requested a transfer. Claimant tore the transfer from the holder and threw it on the floor and an argument ensued. "Because of continuing complaints from passengers, violations of company operating instructions and refusal to obey orders" claimant was discharged on February 26, 1958.

The board in its decision vacated the above quoted findings of the referee and substituted the following: "2. During the claimant's course of employment he received various letters of commendation as to his courtesy, honesty and ability. 3. Claimant was discharged for allegedly failing to pick up two passengers. Claimant did in fact stop for the passengers but, for safety reasons was obliged to make the stop at a different point. 4. On February 20, 1958, the passengers complained to the employer of discourteous treatment, resulting in claimant's discharge. 5. *Claimant's case was taken to arbitration by the union resulting in an award on July 5, 1958, reinstating claimant to his position with full seniority.*" (Italics ours). On these findings the board reversed the referee and awarded benefits.

Basic error is obvious in the decision of the board in two respects. The board based its order on its estimate of the weight of the testimony as to the incidents of February 20, 1958 alone, without any consideration of the cumulative effect of prior misconduct which certainly entered into a proper decision. Moreover it is apparent that the board regarded the arbitrator's award as decisive of claimant's right to benefits.

We need not refer to the considerations which move arbitrators to decide a dispute, such as this, except to say that arbitration, as a procedure set up in a union contract, is based upon practical considerations and

not upon the Unemployment Compensation Law. The board is wholly without authority to delegate its obligation under the law to decide unemployment compensation cases, to arbitrators or to consider itself bound by the result of such arbitration. The award of the arbitrators in this case was an immaterial fact and should not have been considered by the board. *Gagliardi Unempl. Compensation Case,* 186 Pa. Superior Ct. 142, 141 A. 2d 410.

The proceeding is remanded to the board for further proceedings consistent with this opinion and for a decision based upon findings supported by all of the evidence, entirely independent of the arbitration proceeding and the resulting award.