Koble Unemployment Compensation Case.
Danville Silk Company, Appellant, *v.* Unemployment Compensation Board of Review.

566

Argued September 21, 1959. Before Rhodes, P. J., Hirt, Wright, Woodside, Ervin, and Watkins, JJ. (Gunther, J., absent).

George A. D'Angelo, with him Geoffrey J. Cuniff, for appellant.

Sydney Reuben, Assistant Attorney General, with him Anne X. Alpern, Attorney General, for appellee.

Opinion by Rhodes, P. J., November 11, 1959:

The Danville Silk Company has appealed from a decision of the Unemployment Compensation Board of Review. The board granted benefits to its former employe, Betty Koble, who was discharged for violation of company rules. The issue is whether the board erred in concluding that the employe was not chargeable with willful misconduct in connection with her

work within the meaning of section 402(e) of the Unemployment Compensation Law, 43 PS §802(e).

Claimant was employed by appellant as a crimping machine operator from May, 1956, to the date of her discharge, March 6, 1958. In the crimping machine process, the yarn is run through a heating element in a heating chamber in order to crimp it. If the thread breaks while in this process and the yarn remains for any length of time in the heating chamber, it will become overcrimped, and will possibly burn or melt and thus cause considerable damage. A crimping machine operator is employed to patrol the machine so that corrective action can be taken in the event the yarn breaks. In connection with the operation of the crimping machine appellant adopted certain regulations; No. 18 provided: "When break period occurs operator must not leave crimper until reporting to floormen, and at no time should crimper be left unattended." Claimant was aware of the company rule which required that the machine be properly patrolled, and that it should not be left unattended. On a number of occasions claimant left her machine unattended, apparently causing defective yarn. For this conduct she was warned by her supervisor. In December, 1957, claimant was suspended for her failure to follow the proper procedures in the crimping operation, but she was reinstated with a warning that similar occurrences in the future would warrant dismissal. About March 5 or 6, 1958, claimant's supervisor reported that claimant was leaving her machine unattended. He testified he had told her "quite a few times" that in the event she continued these violations she would be discharged. Just prior to the occasion of her discharge claimant was seen approximately one hundred feet away from her machine talking to another employe. This was observed by a Mr. Kramer who is a "fixer" on the machine patrolled by claimant.

Claimant admitted that she had been away from her machine on this occasion, but stated that she merely left to wash her hands and had stopped to talk to another employe. She knew that the machine was never to be left unattended, but that the company permitted the employes short absences to wash their hands or to take samples to the laboratory, both of which required going only twenty to thirty feet from her machine.

The bureau disallowed the claim; the referee affirmed the bureau. An appeal was taken by the employer to the board which remanded the case for additional testimony. On September 16, 1958, the board filed its decision adopting the findings of fact of the referee which were to the effect that claimant was dismissed for violation of the company rules after having been previously suspended and rehired with a warning that further violation of the rules would result in her discharge. The board concluded that claimant's discharge was due to willful misconduct within the meaning of section 402(e) of the Law. Subsequent to this decision, however, the board ordered a reargument, and on January 28, 1959, filed a decision in which it vacated the essential findings of fact in its previous decision, substituted other findings of fact, reversed its previous conclusion, and held that claimant was eligible for compensation because the reason for her discharge did not amount to willful misconduct. While it recognized the company's regulation concerning attendance at the machine, the board found that the company allowed its operators to leave the machines to wash their hands, that claimant performed her duties to the best of her ability and that she "never left her machine unattended other than when she left to wash her hands." The board stated that "to deny the claimant unemployment compensation it must be shown that

the claimant intentionally and deliberately committed acts of misconduct detrimental to the best interests of the employer. Conduct of this nature is not present in this case." To this statement the basic error of the board is largely attributable.

Willful misconduct has been said to include an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of his employe, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or showing an intentional and substantial disregard of the employer's interest or of the employe's duties and obligations to the employer. *Detterer Unemployment Compensation Case,* 168 Pa. Superior Ct. 291, 294, 77 A. 2d 886. In *Gagliardi Unemployment Compensation Case,* 186 Pa. Superior Ct. 142, 147, 141 A. 2d 410, 413: " 'Willful misconduct' does not necessarily require actual intent to wrong the employer. If there is a conscious indifference to the perpetration of a wrong, or a reckless disregard of the employe's duty to his employer he can be discharged for 'willful misconduct' and will be denied benefits. . . . 'An employe is obliged to render loyal, diligent, faithful, and obedient service to his employer.' " While prior repetitious acts of misconduct are sufficient to deny benefits, a single act may constitute willful misconduct. *Dati Unemployment Compensation Case,* 184 Pa. Superior Ct. 292, 295, 132 A. 2d 765.

The facts of this case establish that claimant was guilty of willful misconduct. Although there may have been tacit permission to leave a machine unattended for a short period of time for employes to wash their hands or take samples to the laboratory, the regulation of the employer concerning attendance at the machines

was clear and definite, and was found to be such by the board even in its latest decision granting benefits to this claimant. When the board found that "claimant never left her machine unattended other than when she left to wash her hands," and that "claimant performed her duties to the best of her ability," it capriciously disregarded the evidence particularly the testimony concerning the prior violations, the violation on the occasion of claimant's discharge, and the admissions of claimant. Although stating that she had always properly attended her machine, claimant said as to the incident resulting in her discharge: "I would walk away when I went to wash my hands. As Mr. Kramer said, I talked to Betty Casper. I walked over, asked her how she was going home, with her husband, and he come right behind me." It was established that claimant on this occasion was approximately one hundred feet away from her machine, and that the sink which employes used to wash their hands was only twenty to twenty-five feet from claimant's machine. Obviously claimant's admitted presence one hundred feet from her machine to talk to another employe, thus leaving her machine unattended, was a violation of the company rule and amounted to willful misconduct. At least, it was a disregard of the standards of behavior which the employer had a right to expect and require of his employe; it was in the nature of a conscious indifference to the perpetration of a wrong or a reckless disregard of the employe's duty to the employer. *Detterer Unemployment Compensation Case*, supra, 168 Pa. Superior Ct. 291, 294, 77 A. 2d 886; *Gagliardi Unemployment Compensation Case*, supra, 186 Pa. Superior Ct. 142, 147, 141 A. 2d 410. What we said in *Dati Unemployment Compensation Case*, supra, 184 Pa. Superior Ct. 292, 296, 132 A. 2d 765, regarding the conduct of that claimant is adaptable

to the present situation. We there said (page 296 of 184 Pa. Superior Ct., page 767 of 132 A. 2d): "The disobedience of the order . . . [regarding] her machine was a deliberate violation of employer's rules and of itself a disregard of employer's interest. If each employee could take it upon himself to decide when and how his work should be done, anarchy would result and the function of any industrial establishment would be impeded. By her own testimony an established procedure was . . . [required by the employer]. . . . She put her own judgment above that of her superior and under these circumstances the employer is justified in taking a prompt and firm stand."

The decision of the board is reversed.