89 N.J. Super. 118 (1965)
214 A.2d 40
ROBERT C. SCHOCK, PLAINTIFF-APPELLANT,
v.
BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, AND PUBLIC SERVICE ELECTRIC & GAS COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 1965.
Decided October 21, 1965.
*120 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. George Duggan argued the cause for appellant.
Mr. Edward A. Kaplan argued the cause for respondent Board of Review, Division of Employment Security, Department of Labor and Industry, State of New Jersey.
Mr. Luke A. Kiernan, Jr. argued the cause for respondent Public Service Electric and Gas Company.
The opinion of the court was delivered by KILKENNY, J.A.D.
Claimant Robert C. Schock appeals from a final decision of the Board of Review, Division of Employment Security, holding that he is disqualified under N.J.S.A. 43:21-5(b) from receiving unemployment benefits for the period between March 10, 1964 and April 18, 1964 because he was discharged on March 10, 1964 for violation of the rules of his employer, Public Service Electric and Gas Company, presumably known by him, in that he left his employer's truck with the motor running unattended on a public street and was found by his supervisor in a nearby tavern drinking beer with a co-worker at a time when he should have been on the outside working on his job assignments.
N.J.S.A. 43:21-5(b) provides:
"An individual shall be disqualified for benefits:

* * * * * * * *
(b) for the week in which he has been discharged for misconduct connected with his work, and for the 5 weeks which immediately follow such week (in addition to the waiting period), as determined in each case." (Italics ours)
*121 Claimant contends that this disqualifying provision of the statute is not applicable herein because he was not finally and absolutely "discharged," but merely subjected, after an arbitration hearing, to a "disciplinary lay off" for this misconduct connected with his work. This contention is based upon the fact that, following his discharge, Schock challenged the right of his employer to discharge him, claiming that the discharge was not "for just cause," as required under the terms of the collective bargaining agreement between the Gas Workers Union, Inc., of which he was a member, and his employer, Public Service Electric and Gas Company.
Schock's claim of wrongful discharge was processed, pursuant to the grievance procedure set forth in the labor agreement, to a hearing before an arbitrator. Schock admitted leaving the company truck across the street from a tavern, unattended and with its motor running, and going into the tavern at 2:30 P.M. when he should have been working, and having a beer there. However, he asserted by way of defense or mitigation that he was having trouble with the motor and the company mechanic had advised him to leave the motor running, and that his going into the tavern was to borrow a time sheet from a co-worker, who was in the tavern eating a sandwich and who bought him a beer which he drank. He was doing this while waiting for the co-worker to go out to his truck for the time sheet. The arbitrator decided that Schock's deficiencies did not warrant a discharge, but that a suspension or disciplinary lay-off for the three months while the grievance procedure was pending was a severe and "more appropriate penalty" and would serve as a warning to Schock that "he must be careful in the future to live up to the letter of the rules and regulations of the Company and that any further infractions of the rules may well lead to his discharge." The arbitrator directed that Schock "be reinstated one week from the receipt of the award," which was dated June 13, 1964.
If the word "discharged" in N.J.S.A. 43:21-5(b) was intended by the Legislature to mean only an absolute, *122 final termination of the employment relationship, it is clear that Schock was not discharged within that limited meaning. The pronouncement by the employer that Schock was discharged did not make his discharge a binding finality. The grievance procedure under the collective bargaining procedure, whereby Schock's dismissal was subject to review, reversal or modification by an arbitrator, represented a contractual surrender by the employer of the absolute right to make the discharge of an employee conclusive by its own unilateral action. Donnelly v. United Fruit Co., 40 N.J. 61, 95 (1963). See also William J. Burns International Detective Agency, Inc. v. New Jersey Guards Union, Inc., 64 N.J. Super. 301 (App. Div. 1960). The arbitrator's decision directing Schock's reinstatement, binding by contract upon the employer, demonstrates the lack of finality in the employer's qualified right to discharge.
At most, the employer's discharge of Schock on March 10, 1964 was inchoate. It would not become consummate unless Schock elected not to challenge it under the grievance procedure of the labor agreement, or, having pursued that remedy, the matter was resolved by the arbitrator in favor of the employer. In the instant case the arbitrator reversed the penalty of an absolute discharge, substituted a disciplinary lay-off for three months, and directed Schock's reinstatement. Hence, Schock's employment relationship with Public Service Electric and Gas Company was only temporarily discontinued. It was not permanently terminated without any right to reinstatement, within the literal meaning of the word "discharged."
The Board and the employer contend that the Board is not "bound" by the arbitrator's determination but "must reach its own decision on the evidence adduced at the hearing and the law." No one disputes those propositions. The arbitrator's ruling is not a quasi-judicial application of the Unemployment Compensation Act to which the Board must defer. But the arbitrator's ruling was a fact which, under the collective bargaining agreement, called for the legal conclusion by *123 the Board of Review in applying the statute, and by this court on review, that the claimant ultimately was not "discharged." The Board does not contend that it was not aware of the arbitrator's decision when it ruled.
Philadelphia Transportation Co. v. Unemployment Comp. Bd. of Rev., 186 Pa. Super. 142, 141 A.2d 410, 413 (Super. Ct. 1958), and Pittsburgh Railways Company v. Unemployment Comp. Bd. of Rev., 190 Pa. Super. 342, 154 A.2d 328 (Super. Ct. 1959), are cited by the Board as authority for the proposition that the arbitrator's decision is not binding upon it. Those cases held that the Unemployment Compensation Board of Review cannot delegate to another body its duty to find facts and apply the law in a proceeding for unemployment benefits. With due respect for the views expressed in those decisions, it is our view that the Board cannot find as a fact that an employee was discharged, when in truth he was not discharged in the sense of a final termination of the employment relationship.
A deliberate violation by an employee of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, as in the instant case, constitutes "misconduct connected with his work" within the fair intendment of N.J.S.A. 43:21-5(b). 48 Am. Jur., Social Security, Unemployment Compensation, etc., § 38, at p. 541 (1943); Beaunit Mills, Inc. v. Board of Review, Division of Employment Security, 43 N.J. Super. 172, 183 (App. Div. 1956).
Did the Legislature intend to disqualify an employee guilty of such misconduct from receiving unemployment benefits for the six weeks prescribed in N.J.S.A. 43:21-5(b) only if he is absolutely discharged because of such misconduct, but not to disqualify him if he is penalized for his wrongful conduct by a temporary suspension or disciplinary lay-off? This court does not have unanimity of opinion as to the answer to that question. A majority of the court feels that it would be in plain derogation of the spirit and policy of the law  protection against the hazard of involuntary unemployment  to *124 provide unemployment benefits for the prescribed period of six weeks to employees whose unemployment during that period was due to their own voluntary misconduct.
We recognize that the Legislature used only the word "discharged" in the disqualifying provision of the statute, and that word, in its strictly literal sense, means a total severance of the employment relationship. True, our interpretation of the statute goes beyond a literal application of the language used. But, in construing a statute, where "a literal interpretation would lead to anomalous or absurd results, the spirit of the law controls the letter." Giordano v. City Commission of the City of Newark, 2 N.J. 585, 594 (1949). Chief Justice Weintraub clearly set forth this rule of statutory construction in New Capitol Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155 (1957), in the following words:
"It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end `words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms.' Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378 (1956); Wright v. Vogt, 7 N.J. 1, 6 (1951); Glick v. Trustees of Free Public Library, 2 N.J. 579, 584 (1949)." (at p. 160)
The allowance of benefits for the six weeks in issue under the circumstances herein would do violence to the reason and spirit of the statute. It would subvert its expressed policy of aid to the unemployed, whose unemployment is involuntary through no fault of their own. "The spirit of a statute gives character and meaning to particular terms. The reason of the law, i.e. the motive which led to the making of it, is one of the most certain means of establishing the true sense. * * * It is not `the words of the law, but the internal sense of it that makes the law.' * * * The declared policy is the true *125 key to open the understanding of the statute." Valenti v. Board of Review, 4 N.J. 287, 291-292 (1950).
Our Legislature could have manifested the legislative intent more clearly by incorporating in N.J.S.A. 43:21-5(b) after the word "discharged" the further words "or temporarily suspended." The Pennsylvania statute does so, expressly reciting "discharge or temporary suspension" from work for willful misconduct. See Philadelphia Transportation Co. v. Unemployment Comp. Bd. of Rev., 186 Pa. Super. 142, 141 A.2d 410, 413 (Super. Ct. 1958). It might be argued that, since the Pennsylvania Legislature saw fit to expressly include "temporary suspension" and our Legislature did not, our Legislature did not intend to extend the statutory disqualification to anything short of an absolute discharge. We are not persuaded by such an argument. We believe that the draftsman of the Pennsylvania statute more carefully expressed in clear language the underlying policy of the law  to extend benefits to those unemployed through no fault of their own  whereas our act is not so explicitly drawn. But we have no doubt as to the underlying legislative intent, even through ampler language might have been used.
The underlying policy of our law was summed up in Battaglia v. Bd. of Review, 14 N.J. Super. 24, 27 (App. Div. 1951), in which we said:
"It is not every case of unemployment which entitles an unemployed person to benefits. The purpose of the act is to provide some income for the worker earning nothing, because he is out of work through no fault or act of his own, until he can find employment or for the period stated in the statute, if he continues to be unemployed." (Emphasis added)
We recognize that our statute is remedial and should be liberally construed to accomplish the social aim of the Legislature. But such liberal construction is required not only to aid the worthy who are unemployed, but also to preserve the fund against claims by those not intended to share in its benefits. We find that the Board of Review reached a correct *126 result in disqualifying claimant for the six weeks in question under our interpretation of the statute, as noted above.
Accordingly, the decision of the Board of Review is affirmed.
CONFORD, S.J.A.D. (dissenting).
I agree with so much of the opinion of the majority as holds that claimant was not "discharged" from his employment. But I must dissent from the court's conclusion that the disqualification provision, N.J.S.A. 43:21-5(b), should be interpreted as though it read:
"For the week in which he has been discharged or suspended for misconduct connected with his work, * * *."
The words, "or suspended," are not in the statute, and I cannot assume the Legislature intended the provision to be read as though they were set forth therein. The discrete concepts, "discharge" and "suspension," are well known words of art in legal phraseology, and have been employed with discrimination by the Legislature in other areas. For example, the different results in Strohmeyer v. Borough of Little Ferry, 136 N.J.L. 485 (E. & A. 1947), and Strohmeyer v. Borough of Little Ferry, 6 N.J. Super. 282 (App. Div. 1950), were expressly rested by the courts on the circumstance that the applicable statute expressly covered "dismissal" but not "suspension" when the first case was decided but had been amended to include suspensions when the decision was rendered in the second case. In the present situation, a reference to suspension could easily have been incorporated in this statute, if the Legislature so intended, just as the majority points out that the Pennsylvania Legislature did with respect to the comparable section of the unemployment compensation act of that state.
If utterly no rational purpose could be discerned in a legislative decision penalizing the employee solely for misconduct causing discharge as contrasted with that causing temporary suspension, one might easier indulge the theory that the omission *127 of "suspension" from the statute was an unintended lapse in draftsmanship and read the act as though it were there. Compare Graham v. City of Asbury Park, 69 N.J. Super. 256, 262-263 (App. Div. 1961), affirmed 37 N.J. 166 (1962). But it is entirely reasonable to infer a possible intent that since discharge, by and large, involves more serious misconduct by the employee than temporary suspension or other sanction less than discharge, only discharge should be visited by the statutory penalty. In view of these several considerations, I regard treating suspension in the same way was discharge as constituting an impermissible judicial emendation of the statute.
The majority rests its conclusion on the supposed over-all policy of the statute to protect against involuntary unemployment "through no fault" of the employee. However, the declaration of public policy in the statute mentions "involuntary unemployment," not "fault." R.S. 43:21-2. One suspended for misconduct is nevertheless involuntarily unemployed. My view is that the court should leave strictly to legislative expression the delineation of the areas of "fault" which will deprive an otherwise involuntarily unemployed person of unemployment compensation benefits. The Legislature itself has deliberately chosen not to equate disqualification with fault in consistent correlation. For example, while the act permits a maximum of 26 weeks unemployment benefits, N.J.S.A. 43:21-3(d)(2), it deprives the employee discharged for misconduct of benefits for only the first six weeks, N.J.S.A. 43:21-5(b), allowing recovery of the benefits for the remaining 20 weeks of unemployment though logically equally attributable to the initial fault. So, too, in the cognate social legislation field of workmen's compensation, the Legislature has itself prescribed precisely what kind of fault will preclude recovery, R.S. 34:15-7; N.J.S.A. 34:15-7.1, and our courts have been careful not to expand the area of disqualifying fault beyond the expression of the Legislature. See McKenzie v. Brixite Mfg. Co., 34 N.J. 1 (1961).
*128 Thus, I would confine the disqualification for benefits to that expressly declared by the Legislature, discharge for misconduct. I would conclude that since, as the majority agrees, the claimant was not "discharged," the statute does not contemplate his disqualification, and that the determination of the Board of Review should therefore be reversed.