Blanche Lee *v.* Temple University (Personnel). Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania. Blanche Lee, Appellant.

Argued April 9, 1976, before Judges KRAMER, WILKINSON JR., and BLATT, sitting as a panel of three.

*Ronald J. Harper,* for appellant.

*Daniel R. Schuckers,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE BLATT, August 19, 1976:

On April 5, 1975, Blanche Lee (claimant) was discharged by her employer for falsifying the time records of employees under her supervision. Her subsequent application for unemployment compensation benefits was denied first by the Bureau of Employment Security, then by the referee and finally by the Unemployment Compensation Board of Review (Board) because she had engaged in disqualifying willful misconduct as provided in Section 402(e) of the Unemployment Compensation Law[1] (Act), 43 P.S. §802(e). This appeal followed.

The claimant had been employed by Temple University for approximately 17 years. She had served as a supervisor of employees in the housekeeping department during the last four or five years and on numerous occasions in that role she admitted to having marked time cards to reflect that an employee under her supervision had either reported to or departed from work on schedule when in fact the employee had not done so. It is clear that she made no attempt to conceal this practice, and that she believed the practice to be an acceptable procedure if an employee notified her that he or she would have to report late or depart early from work for a reason acceptable to her.[2]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended.*

[2] The claimant acknowledged every change made on the time cards by signing her name or initials where the entry appeared on the card. At times, the employees concerned had actually punched in so that the time cards reflected both the actual arrival and ac-

The Board found, however, that work rules instituted in July 1973 had specifically prohibited "falsification" of time cards,[3] and that, at the time these rules became effective, the claimant's employer had held meetings of the supervisors to stress among other things the importance of maintaining accurate records of absences and latenesses so that employees would not be paid for time not worked. Nevertheless, as the record describes, the claimant continued to alter the time cards when she thought it appropriate and, when this fact came to the employer's attention, she was discharged.

Willful misconduct has been defined to mean:

"[A] wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employees, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interests or of the employee's duties and ob-

tual departure times as well as the altered times noted by the claimant.

[3] The work rules were not actually admitted into the record until one week after the hearings before the referee. The claimant now contends that she was denied an opportunity to examine these rules and that she was denied an opportunity to rebut the applicability of these rules to supervisory personnel. Throughout the hearings, however, general reference was made to the rule here in question without objection and when, at the close of the hearing, the referee requested that the employer submit a copy of the rules again no objection was raised by claimant's counsel. We believe, therefore, that the rules were properly made a part of the record. Furthermore, our review of the rules reveals nothing on their face which excludes supervisory personnel from their purview. This issue, however, is not critical, for our subsequent discussion will demonstrate that the claimant's conduct can be deemed willful misconduct notwithstanding the applicability of the rules.

ligations to the employer." *Loder v. Unemployment Compensation Board of Review,* 6 Pa. Commonwealth Ct. 484, 488, 296 A.2d 297, 299-300 (1973).

It does not, of course, necessarily require the actual intent to wrong the employer, and "[i]f there is a conscious indifference to the perpetration of a wrong, or a reckless disregard of the employee's duty to his employer he can be discharged for 'willful misconduct'" and will be denied benefits. *Gagliardi Unemployment Compensation Case,* 186 Pa. Superior Ct. 142, 147-148, 141 A.2d 410, 413 (1958). *McIntosh Unemployment Compensation Case,* 196 Pa. Superior Ct. 207, 209, 173 A.2d 652, 654 (1961). It is, however, the employer's burden to prove that the discharged employee is guilty of willful misconduct. *Coulter v. Unemployment Compensation Board of Review,* 16 Pa. Commonwealth Ct. 462, 332 A.2d 876 (1975). The claimant here alleges that she did not falsify time records in violation of the work rules but merely exercised impliedly authorized supervisory discretion to make necessary changes on the time cards. She states that she carried on this practice for five years without objections or warnings from her employer and also that the payroll department never questioned the practice. While the Board did not make any express findings concerning this alleged authority, the presence of such authority is necessarily negated by the Board's findings that the employer did hold meetings attended by the claimant where accurate recording of employee lateness was stressed and that in contravention of this directive she continued the time card alterations.

We are disturbed by the lack of evidence which could clearly refute the claimant's contention that she was following a long-established and not previously questioned practice in altering time card records when she, as supervisor, believed the employees concerned had reasonable excuses for their latenesses or early de-

partures and when the time so lost was made up that day by shortened lunch or coffee-breaks. She, however, offered no corroborating evidence of these contentions, and the referee who heard her testimony, including her undisputed testimony that she personally initialed the corrections she made, chose to give credence rather to the conclusion of the employer that she exceeded her authority and had reason to know that she was doing so. In cases such as this, of course, where credibility is the issue, we must accept the findings of the referee and of the Board.

While the claimant's counsel has ably presented a close case on her behalf, we believe that the findings of the referee and the Board demonstrate that her conduct in making changes on employee time cards amounted to a disregard of the standard of behavior which the employer had a right to expect of her, and this was willful misconduct, apart from whether or not it can be said that she violated work rules applicable to supervisory personnel. We, therefore, issue the following

ORDER

AND Now, this 19th day of August, 1976, the decision and order of the Unemployment Compensation Board of Review is hereby affirmed.