IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Schiavo, III,                      :
                          Petitioner       :
                                           :
            v.                             :     No. 1880 C.D. 2016
                                           :     Submitted: March 31, 2017
Unemployment Compensation                  :
Board of Review,                           :
                          Respondent       :

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                        FILED: September 1, 2017

            William Schiavo (Claimant) has petitioned for review of an adjudication of the Unemployment Compensation Board of Review (Board) holding that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law),[1] 43 P.S. §802(e). The Board affirmed the Referee's decision that Claimant committed disqualifying willful misconduct by falsifying employee time records. For the reasons that follow, we affirm the order of the Board.

            Claimant worked for FedEx Freight, Inc. (Employer) as a manager of operations in Croydon, Pennsylvania. Employees use the so-called Kronos system to report their hours of work. They also complete Kronos Edit Forms to correct

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) states, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week … [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work[.]" 43 P.S. §802(e).

any inaccuracies in their hours recorded in the system before the record is submitted to payroll. On April 8, 2016, Claimant completed a Kronos Edit Form for one of his subordinate employees, Martin Robert. Employer conducted an investigation, and on May 3, 2016, discharged Claimant for falsifying the form.

On May 6, 2016, Claimant applied for unemployment compensation benefits, but the Unemployment Compensation Service Center denied Claimant benefits under Section 402(e) of the Law. Reproduced Record at 1a (R.R. __). Claimant appealed, and a hearing was held before a Referee on August 15, 2016. Both Employer and Claimant presented evidence.

Dmitry Shvartsband, Employer's Employee Relations Specialist Advisor, testified on behalf of Employer. Shvartsband testified that Claimant filled out a Kronos Edit Form for two employees, Christopher Hughes and Martin Robert, on April 6 and April 8, 2016, respectively. Specifically, Shvartsband testified that Claimant completed the Kronos Edit Forms to show that the two employees had taken meal breaks, when in fact they had not.

> [Referee]: [] So well you can just explain how it came to your attention that there was some problem of this nature.
>
> [Shvartsband]: On April 20th one of the dockworkers, Martin Robert, advised one of the supervisors in regards that he wasn't – he did not have the ability to take his meal break while working on April 8th, 2016 and he left work at 22:00.
>
> [Referee]: And so the Claimant did something related to that you allege, or?
>
> [Shvartsband]: The Claimant falsified Kronos [E]dit [F]orms.
>
> [Referee]: To show what?
>
> [Shvartsband]: To show that the meal break was taken.
>
> [Referee]: All right. So what about the other date?

[Shvartsband]: And the other date of [April 6] a[n] individual by Christopher Hughes did not take a meal break as well and the Kronos [E]dit [F]orm states that meal break was taken and different hours were entered into the Kronos time keep system.

[Referee]: All right. So was the Claimant the supervisor for these individuals?

[Shvartsband]: Yes.

Notes of Testimony (N.T.) 7; R.R. 15a.

Shvartsband testified that employees must fill out their own Kronos Edit Forms, which includes their signed acknowledgement that the recorded times are accurate. Shvartsband acknowledged that a supervisor may complete a Kronos Edit Form for a subordinate employee if the employee later confirms its accuracy. Shvartsband testified that Claimant admitted to him that he had filled out Kronos Edit Forms for both Robert and Hughes and that he had forged Robert's signature on the form. N.T. 7-8; R.R. 15a-16a.

Employer also offered into evidence the Kronos Edit Form that Claimant completed on behalf of Robert. Certified Record, Item No. 14, Employer Exhibit 1. The form states that on Friday April 8, 2016, Robert worked from 1:35 p.m. to 10:30 p.m., which included a meal break from 6:30 p.m. to 7:00 p.m. In the portion to be completed by a manager, the form shows Claimant's name and signature. In the portion to be completed by the employee, the name Martin Robert appears twice, once in print form and once in signature form. Shvartsband testified that the entire Kronos Edit Form, including both the part filled out by Claimant and the part purportedly filled out by Martin, were done in the same handwriting, *i.e.*, Claimant's handwriting.

Claimant testified about the Kronos Edit Form used by Employer, and his role in handling the Kronos time-keeping system.

3

[Claimant's Attorney]: Can you explain what Kronos is?

[Claimant]: Kronos is our timekeeping system. A Kronos [E]dit [F]orm is used on a daily basis for many reasons, employees forget to punch in, there's a problem with their computer. The Kronos is a computer, it's not a manual time clock system so there's often issues with it. Employees forget to scan in, clock out, take lunches. A lot of times it was verified with the employee and then the employee ultimately is presented with the form to look over and then they [*sic*] sign off on it.

N.T. 15-16; R.R. 23a-24a.

Claimant explained that in April 2016, another supervisor was on vacation, and in his absence, Claimant assisted the afternoon/evening supervisor, Kevin Tinney, with administrative matters, which included handling Kronos Edit Forms. Claimant testified that on Friday April 8, 2016, a subordinate, Martin Robert, forgot to punch out at the end of his shift. The Kronos system also showed that Robert had not punched in and out for a meal break. Robert was not scheduled to report back to work until the following Monday, April 11, at 1:00 p.m. Because payroll is calculated Mondays at 10:00 a.m., Claimant called Robert and asked for his correct hours so that Claimant could enter the accurate times in the Kronos computer system in order to ensure that Robert was paid for the hours he actually worked. Claimant testified that while he was on the phone, he jotted down Robert's hours on a Kronos Edit Form and entered the hours into the computer, which was "normal practice." N.T. 20; R.R. 28a. Claimant testified regarding his conversation with Robert about his meal break as follows:

[Claimant]: So I called [Robert] on the phone, I said hey bud, you're missing a punch. He gave me the times; I wrote them down on the form in my office. And then he started saying about [Kevin Tinney] not wanting, giving him a lunch and he started on a rant of being upset about different things. So I said

4

> to him okay bud, I'll put this in, we'll make sure you get paid and then we'll talk about your other issues on Monday. Make sure you come and see me on Monday. He said okay boss, thanks have a good weekend.

N.T. 18; R.R. 26a.

Claimant testified that he advised Robert that when he arrived for work on Monday, he would need to sign the Kronos Edit Form acknowledging that the hours reported on the form were correct. The form would then be submitted to payroll to verify that the hours previously logged in the computer were correct. Claimant further testified as follows:

> [Claimant's Attorney]: Okay. So with regards to the Kronos form that you filled out was it ever your intention to have that form submitted?
>
> [Claimant]: Never. Never my intention.
>
> [Claimant's Attorney]: What was your intention with that form?
>
> [Claimant]: That form was simply a reminder to me. After the message to Martin [Robert] and the phone call I was basically writing the information. It was going to be on my desk. It was a reminder. I had an in-bin and it was there on the in-bin was the last I can remember for him to come in and sign it.

N.T. 20; R.R. 28a. Claimant testified that he often filled out a Kronos Edit Form "as a reminder;" he "would make these notations in [his] office, fill out the forms, leave them in [his] desk" and later catch up with the employee. N.T. 17; R.R. 25a.

Claimant admitted that he filled out the Kronos Edit Form for Robert and printed Robert's name on the form. However, he denied writing Robert's signature on the form. Claimant also testified that he did not submit Robert's form to payroll; he surmised that another supervisor who had access to his office had submitted the form to payroll.

5

Claimant next testified about Christopher Hughes' Kronos Edit Form:

[Claimant's Attorney]: Can you tell me what exactly happened with [Christopher Hughes'] form?

[Claimant]: Chris, I believe his form, his hours were incorrect. According to the audit report and conferring with [Kevin Tinney] who was his direct report I asked [Tinney] … did he actually work these hours? He said well, I was going to have him take a lunch because Martin was filling in for his supervisor so I'm not sure but I'll take care of it Bill. So I think that these are the times. I had originally other times put in and I whited them out and put in correct times based on what [Tinney's] response was to me. But the bottom line [is] he was going to present this to the employee. Ultimately the employee would review it and sign it.

[Claimant's Attorney]: And did the form come back to you signed?

[Claimant]: No, it never came back to me. [Tinney] handled it from that point forward.

N.T. 24; R.R. 32a.

Claimant testified that Shvartsband visited his facility and questioned him generally about the Kronos system and Kronos Edit Forms. Shvartsband was an infrequent visitor to the Croydon center and Claimant did not infer that he was under investigation by Shvartsband's questions.

[Claimant's Attorney]: At any point in time when [Shvartsband] was asking you questions were you ever informed that you were being investigated for falsification of records?

[Claimant]: Never.

[Claimant's Attorney]: Okay. And during the time period where [Shvartsband] was asking you questions did he ever actually show you Mr. Robert's form?

6

[Claimant]: He never directly showed it to me. He opened the file casually so I would see it.

[Claimant's Attorney]: Okay. And what did you say if anything in response?

[Claimant]: Well he showed me Chris's, Chris Hughes, which is a normal edit form that was handled by [Tinney]. And then Zach Peiffer who was normal, it was a normal edit for that was handled by [Tinney]. And then he opened Martin's form, folder like this. I immediately spotted the form, I said how is that in there why is that in the form? And [Shvartsband] closed the file and said don't worry about that and pushed it off to the side.

[Claimant's Attorney]: Okay. Were any other questions asked at that point about Mr. Robert's forms?

[Claimant]: No.

N.T. 23; R.R. 31a.

Employer did not call Robert to rebut Claimant's testimony. Likewise, Claimant did not call Robert to corroborate his testimony.

The Referee found Claimant ineligible for benefits under Section 402(e) of the Law. Specifically, the Referee made the following findings of fact:

1. For the purpose of this appeal the [C]laimant was last employed as a full-time manager of operations with [Employer] from June 16, 2008 until May 3, 2016, his last day of work, at a final rate of pay of $3,097 biweekly.

2. In April 2016, the [C]laimant falsified a [K]ronos [E]dit [F]orm regarding an employee's time worked and breaks taken on April 8, 2016.

3. During April 2016, the [E]mployer conducted an investigation regarding employee time information.

4. During the investigation, the [C]laimant admitted that he had signed his name to an employee's form.

7

5. On May 3, 2016, after completing an investigation, the [E]mployer terminated the [C]laimant's services in part for falsification of a [K]ronos [E]dit [F]orm dated April 8, 2016.

Referee Decision, 8/17/2016, Findings of Fact Nos. 1-5, at 1-2; R.R. 39a-40a.[2]

The Referee credited Shvartsband's testimony over Claimant's testimony:

> In this case, the [E]mployer's [W]itness testified that the [C]laimant admitted to signing an employee's name to a document dated April 8, 2016 known as a [K]ronos [E]dit [F]orm. The referee finds the testimony of the [E]mployer's [W]itness credible and resolves all conflicts in the testimony in favor of the [E]mployer.
>
> The [C]laimant denied that he signed an employee's name to a [K]ronos [E]dit [F]orm. The [C]laimant further denied that he admitted to doing so during an investigation. The referee is unable to accept the [C]laimant's testimony as credible. The competent evidence in the record reveals the [C]laimant falsified a time record of an employee. Such conduct constitutes a disregard of the standards of behavior an employer has a right to expect of an employee. Therefore, the [C]laimant is ineligible for benefits under Section 402(e) of the [Law].

Referee Decision, 8/17/2016, at 2; R.R. 40a. Claimant appealed to the Board.

The Board affirmed the Referee. In doing so, the Board adopted the Referee's findings, conclusions, and credibility determinations. The Board modified Findings of Fact No. 2 and 4 as follows:

> [2.] In April 2016, the [C]laimant falsified a coworker's Kronos [E]dit [F]orm by fraudulently logging that the coworker took a break and by forging the coworkers' signature.

> ***

---

[2] The Referee made findings of fact that Claimant falsified and forged Robert's Kronos Edit Form. The Referee did not make any findings regarding the alleged falsification of Hughes' Kronos Edit Form.

8

[4.] During the investigation, the [C]laimant admitted to falsifying the coworker's Kronos [E]dit [F]orm.

Board Adjudication, 10/21/2016, at 1. Claimant petitioned for this Court's review.

On appeal,[3] Claimant argues that two of the Board's findings of fact are not supported by substantial evidence and that Employer did not satisfy its burden of proving that Claimant engaged in willful misconduct.

In his first issue, Claimant challenges the Board's Findings of Fact Nos. 2 and 4. He contends that those findings are not supported by substantial evidence, which is "relevant evidence upon which a reasonable mind could base a conclusion." *Stage Road Poultry Catchers v. Department of Labor and Industry, Office of Unemployment Compensation, Tax Services*, 34 A.3d 876, 885 (Pa. Cmwlth. 2011). In reviewing a substantial evidence argument, this Court must examine the evidence in the light most favorable to the prevailing party and give that party the benefit of any inferences that can be logically and reasonably drawn from the evidence. *Id.* "Findings made by the Board are conclusive and binding on appeal if the record, when examined as a whole, contains substantial evidence to support those findings." *Ross v. Unemployment Compensation Board of Review*, 861 A.2d 1019, 1022 (Pa. Cmwlth. 2004) (quoting *Kelly v. Unemployment Compensation Board of Review*, 776 A.2d 331, 336 (Pa. Cmwlth. 2001)).

Finding of Fact No. 2 states that Claimant "falsified a coworker's Kronos [E]dit [F]orm by fraudulently logging that the coworker took a break and by forging the coworkers' signature." Board Adjudication, 10/21/2016, at 1.

---

[3] Our scope of review of the Board's decision is to determine whether errors of law were committed, constitutional rights were violated, and necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. §704; *Oyetayo v. Unemployment Compensation Board of Review*, 110 A.3d 1117, 1121 n.2 (Pa. Cmwlth. 2015).

Claimant argues that this finding is not supported by substantial evidence because he testified that he completed the form only as a reminder to himself of Robert's correct hours. Further, Claimant specifically told Robert that he had to sign the form. Mistakenly, the form was submitted to payroll by an unknown third party before Robert could sign it. Claimant also argues that there was no falsification of hours because he completed the form only after he spoke with Robert, who advised Claimant of his punch-in and punch-out times.

Claimant also contends that the Board's Finding of Fact No. 4 that "[d]uring the investigation, the [C]laimant admitted to falsifying the coworker's Kronos [E]dit [F]orm" is not supported by substantial evidence. Board Adjudication, 10/21/2016, at 1. He asserts that his testimony established that he was never asked about Robert's Kronos Edit Form during the alleged investigation. Indeed, when Claimant saw Robert's form in Shvartsband's file, he immediately asked how it got there; the form was only a reminder to himself and should not have been submitted to payroll. Claimant argues that this was the extent of his discussion with Shvartsband pertaining to Robert's Kronos Edit Form. He never admitted to forging Robert's signature or submitting the document to payroll.

We reject the argument that the findings of fact challenged by Claimant are not supported by substantial evidence. Shvartsband testified that Claimant admitted that he filled out Robert's Kronos Edit Form and signed Robert's signature. The Board credited Shvartsband's testimony over Claimant's contradictory testimony. Claimant's real challenge is to the Board's credibility determination, but "questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Peak v. Unemployment Compensation Board of*

10

*Review*, 501 A.2d 1383, 1388 (Pa. 1985) (quoting *Miller v. Unemployment Compensation Board of Review*, 405 A.2d 1034, 1036 (Pa. Cmwlth. 1979)). Accordingly, we are constrained to conclude that Claimant's argument in this regard lacks merit.

Claimant next argues that Employer did not satisfy its burden of proving that Claimant engaged in willful misconduct. Specifically, Claimant contends that the Board erred in finding that he "consciously disregarded" Employer's interest because he did not intend that Robert's Kronos Edit Form be submitted to payroll. Because Claimant did not *consciously* disregard Employer's interest or *intend* to mislead Employer, his actions did not rise to the level of *willful* misconduct.

Section 402(e) of the Law disqualifies a claimant from receiving unemployment compensation benefits if "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work[.]" 43 P.S. §802(e). Willful misconduct is not defined in the Law, but has been explained by this Court as the:

> (a) wanton and willful disregard for an employer's interests, (b) deliberate violation of an employer's rules, (c) disregard for standards of behavior which an employer can rightfully expect of an employee, or (d) negligence indicating an intentional disregard of the employer's interests or an employee's duties and obligations.

*Ross*, 861 A.2d at 1022 (quoting *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452, 456 (Pa. 1997)). The employer has the burden of proving that a claimant was discharged for willful misconduct. *Id.* Notably, a claimant's falsification of his employer's records constitutes a disregard for the standards of behavior an employer has the right to expect of its employees. *See*

11

*Henninger v. Unemployment Compensation Board of Review*, 468 A.2d 1191 (Pa. Cmwlth. 1983) (finding claimant engaged in willful misconduct by falsifying overtime hours for himself and his subordinates).

Claimant's assertion that he lacked the requisite *mens rea* to commit willful misconduct is premised solely on his own testimony, but that testimony was not credited by the Board. Claimant is mistaken that the Board needed to demonstrate that he had an intent to deceive or mislead Employer. Where "there is a conscious indifference to the perpetration of a wrong, or a reckless disregard of the employee's duty to his employer [a claimant] can be discharged for willful misconduct and will be denied benefits." *Lee v. Temple University (Personnel)*, 363 A.2d 890, 891 (Pa. Cmwlth. 1976) (quoting *Philadelphia Transportation Company v. Unemployment Compensation Board of Review*, 141 A.2d 410, 413 (Pa. Super. 1958)). Our decision in *Lee* is particularly instructive because it applied this principle where a claimant was discharged for logging incorrect hours for a subordinate without intending to defraud her employer.

In *Lee*, the claimant worked as a housekeeping supervisor, who admitted that she had marked time cards to show that an employee under her supervision had either reported to or departed from work when in fact the employee had not done so. The claimant believed this was an acceptable practice if an employee notified her that he or she would have to report late or depart early from work for a good reason. When the employer learned of the claimant's practice, it discharged her. On appeal, this Court rejected the claimant's argument that she did not commit willful misconduct because she was merely exercising her supervisory discretion to change time records. We held that the claimant's "conduct in making changes on employee time cards amounted to a disregard of

12

the standard of behavior which the employer had a right to expect of her, and this was willful misconduct…." *Lee*, 363 A.2d at 892.

Further, in *Schooley v. Unemployment Compensation Board of Review*, 402 A.2d 1109 (Pa. Cmwlth. 1979), the claimant was discharged for punching in the time cards of two of her coworkers. Although the coworkers' hours were recorded correctly, we held that the claimant had engaged in willful misconduct:

> It may well seem that claimant's conduct was no more than a friendly and considerate favor to her coworkers without any harm or prejudice to her employer, yet such conduct amounted to a disregard of behavior which an employer has a right to expect of an employee.

*Id.* at 1110.

In sum, intent to mislead is not required for a claimant to commit willful misconduct under Section 402(e) of the Law. Here, the Board found that Claimant transcribed incorrect information regarding a subordinate employee's hours and forged the employee's signature on that document. These factual findings support the Board's legal conclusion that Claimant engaged in willful misconduct under Section 402(e).[4]

---

[4] Claimant alleges that Employer did not meet its burden of showing that Claimant violated an established work rule. It is true that when a charge of willful misconduct is based on the violation of a work rule, the employer must prove the existence of the rule, the reasonableness of the rule, and the fact of its violation. *Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1162 (Pa. Cmwlth. 2013). However, Employer did not discharge Claimant pursuant to violation of a work rule. Claimant was discharged because he disregarded a standard of behavior an employer has the right to expect of its employee. It is well-settled that "the existence of a specific rule is not necessary where the employer has a right to expect a certain standard of behavior, that standard is obvious to the employee, and the employee's conduct is so

**(Footnote continued on the next page . . .)**

For the reasons stated above, we affirm the order of the Board.

_____
MARY HANNAH LEAVITT, President Judge

---

**(continued . . .)**
inimical to the employer's interest that discharge is a natural result." *Id.* Accordingly, Claimant's final argument fails.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Schiavo, III, : 
           Petitioner : 
            : 
          v. :   No. 1880 C.D. 2016
            : 
Unemployment Compensation : 
Board of Review, : 
          Respondent : 

# **O R D E R**

AND NOW, this 1st day of September, 2017, the order of the Unemployment Compensation Board of Review dated October 21, 2016, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge